UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
VICTOR DELGADO,
                                   :
              Petitioner,            REPORT & RECOMMENDATION
                                   :
         -against-                   02 Civ. 7631 (KMW)(MHD)
                                   :
ISRAEL RIVERA, Washington
Correctional Facility,             :

              Respondent.   :
------------------------------x

TO THE HONORABLE KIMBA M. WOOD, U.S.D.J.:


    Pro se petitioner Victor Delgado seeks a writ of habeas corpus

to challenge his 1999 conviction in New York State Supreme Court,

New York County, on four counts of Robbery in the First Degree, two

counts of Robbery in the Second Degree and one count of Burglary in

the First Degree. The trial court sentenced him to an aggregate

term of ten to twenty years, a sentence that he is currently

serving.


    Delgado asserts two claims. First, he argues that he was

denied his Sixth Amendment right to the effective assistance of

counsel when his trial attorney conceded that Delgado's co-

defendant was "unavailable" for purposes of determining the

potential admissibility of the co-defendant's confession to the

police. Second, he contends that the trial court violated his right

of confrontation when it admitted the redacted statement of his co-

1

defendant in the absence of a demonstration that the declarant was unavailable and that the statement was reliable.

Respondent urges denial of the writ. He contends that the "unavailability" aspect of petitioner's confrontation claim is procedurally barred and that both claims are meritless. We agree, and recommend that the writ be denied and the petition dismissed.

A. <u>Prior Proceedings</u>

Delgado's conviction stemmed from the robbery of a couple in the early morning hours of November 7, 1997. As Jose Mata and Lourdez Tedjada were about to enter their apartment at 500 West 213th Street in Manhattan, two Hispanic males, armed with a gun and knife, seized both of them and forced them into the apartment. Using blows and threats of more force, the two assailants took jewelry and a large amount of cash from the victims. (Tr. 780-801, 821-32, 838, 1175-90, 1193-1200). Hearing a knock on the door, the two robbers fled by the fire escape. (Tr. 838, 1199-1200).

The knocking at the door was by a police officer, who had been summoned to the scene by a report of a robbery in progress. (Tr. 512-13, 515, 521-23, 605, 630). Two other officers, on the roof of the building, observed the two assailants flee down the fire

escape, and then through an alley. (Tr. 691-96, 719-21, 723, 728, 757-58, 762, 1056-59). Still another pair of officers, alerted by radio, came to the far end of the alley and saw petitioner and another man, named Fabien Abel, emerge from it. (Tr. 1293, 1295-98, 1302, 1307, 1329, 1332-33, 1339, 1343, 1358-59, 1361, 1427, 1430, 1432-34, 1438, 1440, 1445, 1449-50, 1461-62, 1464, 1491, 1493). The officers gave chase and ultimately seized Abel. (Tr. 1299-1300, 1303, 1312-15, 1320, 1349, 1369, 1374, 1434-37, 1441, 1443, 1479, 1482, 1513, 1578, 1582, 1602, 1605, 1627-29, 1634-35, 1640). Two other officers had arrested petitioner moments earlier. (Tr. 1299, 1313, 1504-05, 1510-12, 1515, 1572, 1605-06). The police seized both jewelry and cash from the two men (Tr. 1083-84, 1112-14, 1118-19, 1122, 1124, 1135-42, 1520, 1522, 1524, 1526-28, 1530-32, 1535-36, 1537-39, 1541, 1585-86, 1610, 1642-45, 1649-51. 1653), and at a show-up moments later Tedjada identified both men as the robbers. (Tr. 850, 872-75, 932).

Following these arrests, Abel made a statement to the police while in custody at the precinct. He admitted his role in the robbery and also identified petitioner as his partner in crime. (Tr. 1680-87).

In the wake of these events, a New York County grand jury indicted both men, charging them each with four counts of first-

degree robbery, two counts of second-degree robbery and one count of first-degree burglary. (Declaration of Assistant Attorney General Beth Thomas, executed Nov. 26, 2002, Ex. B at 3). Both defendants moved to suppress the physical evidence, identification testimony and Abel's statement. (Id.). Those motions triggered a suppression hearing before the Hon. John A. K. Bradley, S.C.J., at the conclusion of which the court denied the motions. (Id.). Justice Bradley later re-opened the hearing to consider additional evidence, and then, by decision dated January 12, 1999, he adhered to his original decision. (Id.).

On January 13, 1999, Abel pled guilty to one count of first-degree robbery in full satisfaction of the charges against him. (Id. at 3 n.1; Tr. 13-14).[1] On the same day Delgado went to trial before the Hon. Martin Rettinger, S.C.J., and a jury.

In the course of Delgado's trial, the two victims recounted the assault by Abel and Delgado, who had grabbed them at knife- and gun-point and shoved them into their apartment, tied them up, threatened to kill them, and took jewelry and cash. (Tr. 780-801, 821-32, 838, 1175-90, 1193-1200). Ms. Tedjada identified Abel and Delgado as the assailants (Tr. 843, 854, 880, 930-31), and Tedjada

---

[1] Abel was subsequently sentenced to a ten-year prison term for his role in the robbery. (Thomas Decl., Ex. B at 3 n.1).

and Mata each confirmed that the jewelry seized from Delgado and Abel by the police had been stolen from them. (Tr. 817, 826-29, 1180, 1185). They also recognized a green jacket recovered near the scene as a garment worn by Delgado. (Tr. 844, 1187). In addition, Mr. Mata confirmed that several two-dollar bills and a 1934 five-dollar bill that the police had recovered from Delgado were also part of the loot stolen from him by the two men. (Tr. 1189).

The State also called a number of the officers involved in the incident to testify at trial. Thus, Officers Dennis DeQuatro and Eileen Baer recounted receiving a radioed report of a robbery in progress in a second floor apartment at 500 West 213rd Street involving a man in a green jacket and a man in a yellow jacket. (Tr. 512-13, 515, 605, 630, 975). They reported going to the building in question, and arriving in front of the apartment, from which they heard the sounds of voices, footsteps and "scuffling". (Tr. 516-18, 606-07, 976-79). When other officers arrived at the building, two of them went to the roof, after which DeQuatro knocked on the apartment door, precipitating more activity in the apartment, including the sound of breaking glass. When DeQuatro and Officer Baer entered the apartment, they discovered Tedjada and Mata, both of whom had been bound. The couple told the officers that two armed men had robbed them and had just departed by way of the fire escape. (Tr. 522-27, 535-36, 634, 839, 982-84, 1201).

Officers Timothy Murphy and Dwana Garner, who were on the roof at the time, heard the sound of breaking glass and then looked down, where they observed two men, one in a green jacket and dark shirt and the other in a yellow jacket, climb out of the window on the second floor and descend the fire escape. The two men ran into an alley leading to 212th Street and then, after encountering a fence, turned into another alley, leading towards Broadway. (Tr. 1061-62, 1064, 1293, 1295-98, 1302, 1307, 1329, 1332-33, 1339, 1343, 1358-59, 1361, 1427, 1430, 1432-34, 1438, 1440, 1445, 1449-50, 1461-62, 1464, 1491, 1493).

Officers Owen Steele and Peter Fiorello, who were on motor patrol, heard a radioed report of the two suspects entering an alley leading to 212th Street, and they drove to the other end of the alley. They observed Delgado, dressed in a dark shirt, and Abel, dressed in a yellow jacket, emerge from the alley, with Delgado holding a gun, which he promptly discarded together with a magazine clip of bullets. (Tr. 1293, 1295-99, 1302-03, 1307, 1312, 1329, 1332-33, 1339, 1343, 1358-60, 1361, 1363, 1365, 1378, 1397-98, 1427, 1430, 1432-34, 1438, 1440, 1445, 1447, 1449-50, 1461-62, 1464, 1491, 1493). As the two men started to walk towards Tenth Avenue Officer Steele called out to them and they began to run in opposite directions with the officers in pursuit. (Tr. 1299, 1303,

1312-13, 1320, 1349, 1369, 1374, 1434-35, 1441, 1479, 1482).

Officer Marc Seidell was also in a patrol car with a partner when he saw Delgado run between two parked cars. Seidell and his partner, Officer Gerard Tylee, stopped and arrested Delgado at gunpoint. (Tr. 1299, 1313, 1504-05, 1510-112, 1515, 1572, 1605-06). At the same time Officer Steele was chasing Abel towards Broadway. As Abel reached Broadway, he was cornered by Steele and by Officer Fiorello driving their patrol car, and the police then arrested him. (Tr. 1299-1300, 1314-15, 1434-35, 1443, 1513, 1578, 1582, 1605, 1607, 1627-29, 1634-35, 1640).

Within minutes other police officers drove Tedjada to the location on Broadway where both Delgado and Abel were being held. When asked whether she recognized the two men, she confirmed that Abel was one of the two robbers, and after first saying that she could not identify Delgado because he had worn a mask, she then said that she did recognize him because of other features. (Tr. 850, 872-75, 932).

Other officers searched the vicinity of the alley and recovered the gun that Delgado had deposited on top of a garbage can, as well as a magazine clip and a knife. They also found a discarded green jacket and a black mask. (Tr. 568-570, 596, 1300,

1315-17, 1319, 1326, 1328, 1384, 1389, 1392-93, 1520, 1608, 1630, 1632).

When Delgado arrived at the precinct, the officers recovered from him a Warner Brothers watch that had apparently belonged to the victims. (Tr. 1537-38, 1610). They also discovered on his person a collection of two-dollar bills and a 1934 five-dollar bill, all of which belonged to Mata. (Tr. 1083-84, 1112-14, 1118-19, 1122, 1124, 1135-42, 1524, 1526, 1532, 1535-36, 1538-39, 1585-86). From Abel the police seized jewelry belonging to the couple, $2,800 in cash stolen from the apartment and a language tape that also belonged to the victims. (Tr. 1520, 1522, 1526-28, 1530-31, 1541, 1642-45, 1649-51, 1653).

Among the police witnesses at trial, Det. Robert Noyer testified about an inculpatory statement made by Abel. In that statement Abel admitted committing the robbery with another man, although the statement, as then read to the jury in redacted form, did not mention that the other man was Delgado. (Tr. 1795, 1798). Abel reported that a *santero* -- literally, a "saint" or "witch doctor", but, in context, a tipster -- had led him to the apartment in question with the other man, apparently with the promise that they would find large amounts of cash and cocaine there. Abel recounted that he and his companion had seized the occupants as

they were entering the apartment at gunpoint, tied them up and searched for money and drugs. He confirmed that they had found and taken thousands of dollars in cash and had fled when the intercom rang and they heard a knock on the door. He recounted as well their flight down the fire escape and to the street, where he was arrested. (Tr. 1799-1801).

Delgado testified in his own defense. He claimed that he had been in the vicinity of 212th Street at the time of his arrest because he worked as a limousine driver and was waiting for the return of two passengers whom he had driven to that neighborhood at 3:30 that morning in accordance with telephoned instructions he had received from the dispatcher at his limousine service. (Tr. 1932-1933, 1935-36, 1972, 1978, 1983-85, 1990, 2025, 2027, 2037). According to Delgado, one of the passengers was wearing a yellow jacket, and he claimed that just before his arrest he had spotted that individual, who told him he was ready to leave. (Tr. 1934-37, 1992-95, 1997, 2000-04, 2016). As recounted by petitioner, the police at that moment arrested him, and the passenger fled towards Broadway. (Tr. 1937-39, 2004-05, 2023).

Petitioner also called a police detective, Harold Hernandez. He testified that he had interviewed Mr. Mata just after the robbery, and that Mata had reported that one of the robbers was

wearing a yellow jacket and a mask and wielding a gun. According to Hernandez, Mata described the other man as holding a knife. (Tr. 1922, 1924-25).[2]

On rebuttal the State called the manager of the limousine service for which Delgado worked. He reported that, contrary to what Delgado had asserted, the service had not called him after 10:30 p.m. on the night in question to pick up any passengers. (Tr. 2077, 2095-96, 2103, 2106-08, 2114-16, 2127-28, 2136-37, 2139, 2141).

On February 3, 1999, the jury convicted petitioner on all seven charges. (Tr. 2337-42). On March 26, 1999, the court sentenced him to three concurrent prison terms of five to ten years on two counts of first-degree robbery and a single count of first-degree burglary, and a concurrent term of three to six years for second-degree robbery, and it separately imposed -- consecutive to these terms -- a set of concurrent five-to-ten-year terms for two counts of first-degree robbery and a concurrent term of three to six years for second-degree robbery. (S.Tr. 13-14).

Petitioner appealed his conviction and sentence to the Appellate Division, First Department. In support of his appeal,

---

[2] The purpose of this testimony was apparently to suggest that it was Abel who was holding the gun and not petitioner, thus contradicting Abel's statement to the police.

10

Delgado advanced three principal categories of complaint. First, he argued that the trial court had erred in finding that the police had had probable cause to arrest him. (Thomas Decl., Ex. A at 37-49).[3] Second, he complained about the admission of Abel's statement as a declaration against penal interest. (Id., Ex. A at 49-58). In pressing this argument, he addressed the substance of the trial-court ruling, which had found that Abel was unavailable to testify and that his confession was a reliable statement against penal interest. (See id., Ex. A at 51-58). Apart from challenging this ruling, Delgado also criticized the performance of his trial counsel, whom he attacked for conceding (improperly, in his view) that Abel was unavailable at the trial because he was invoking his Fifth Amendment privilege. (Id., Ex. A at 49-50, 53). Third, Delgado asserted that his sentence was excessive. (Id., Ex. A at 60-62).

On October 16, 2001, the Appellate Division affirmed the conviction and sentence. The court found that the evidence at the suppression hearing had been ample to establish probable cause for Delgado's arrest. As for Abel's statement, the court upheld the

---

[3] Delgado argued that the police had, at most, reasonable suspicion to justify an on-the-street inquiry, and that the suppression of the fruits of the arrest should have led to the preclusion of testimony about Tedjada's show-up identification of him and the officers' testimony about the recovery of stolen property. (Id., Ex. A at 44-49).

ruling of the trial court that permitted its admission in redacted form, as a statement against penal interest. Specifically, the appellate court found that there was adequate corroborating evidence to ensure the reliability of the statement. As for the asserted availability of Abel, the panel held that petitioner's counsel had waived the argument in the trial court, and it declined to review it in the interest of justice. The Court also observed, in the alternative, that the claim was meritless because a defendant who has been convicted but not yet sentenced may permissibly invoke his Fifth Amendment privilege. The court also affirmed Delgado's sentence. People v. Delgado, 287 A.D.2d 327, 328, 731 N.Y.S.2d 31, 31-32 (1st Dep't 2001).

Petitioner next sought leave to appeal to the New York Court of Appeals. By letter dated November 8, 2001, counsel pressed all of the claims that he had advanced before the First Department. (Thomas Decl., Ex. D). On January 3, 2002, the Court of Appeals denied his application. People v. Delgado, 97 N.Y.2d 703, 739 N.Y.S.2d 104 (2002).

Having been rebuffed by the state courts, Delgado turned to federal court, filing his petition for a writ of habeas corpus based on his challenge to the admission of Abel's statement and his contention that his counsel had performed inadequately in that

regard.


<u>ANALYSIS</u>


Petitioner asserts that his trial attorney denied him the effective assistance of counsel because he conceded that Delgado's co-defendant Abel was unavailable even as he argued against the admission of Abel's statement. Delgado also challenges the trial court's decision to admit the confession as a statement against penal interest. We address these arguments in the order in which Delgado presents them, but first summarize the standards governing habeas review.


I. <u>Habeas Standard of Review</u>


The stringency of federal habeas review turns on whether the state courts have passed on the merits of the petitioner's claim, that is, whether the decision of the highest state court to consider the claim is "based on the substance of the claim advanced, rather than on a procedural, or other, ground." <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 311 (2d Cir. 2001)(discussing 28 U.S.C. § 2254(d)). In Delgado's case, the Appellate Division addressed the substance of his current claims, holding that the lower court had properly admitted the redacted statement of his co-defendant and

that there was no merit to the "availability" argument that his

attorney had declined to make. Delgado, 287 A.D.2d at 328, 731

N.Y.S.2d at 31-32. In short, the Appellate Division adjudicated

Delgado's claims "on the merits." See, e.g., Norde v. Keane, 294

F.3d 401, 410 (2d Cir. 2002)(state court decides "claim on the

merits when it (1) disposes of the claim on the merits and (2)

reduces its disposition to judgment."); Sellan, 261 F.3d at 311.

See also Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005).[4]


    Once the state court has addressed the merits of the

petitioner's habeas claims, he may obtain relief only if the state

court's ruling

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See, e.g., Bell v. Cone, 535 U.S. 685, 693-94

(2002); Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Howard v.

Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Brown v. Artuz, 283

---

[4] Respondent specifically concedes that the Delgado presented
his ineffective-assistance claim to the Appellate Division
(Resp's Memo at 16), although the panel did not discuss it
explicitly. Under the circumstances, we must infer that the
appellate court decided the claim on its merits. Indeed, by
holding that Abel was unavailable, the panel rejected the
underlying premise for Delgado's ineffective-assistance claim.

F.3d 492, 497-98 (2d Cir. 2002).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard, 406 F.3d at 122 (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)). A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts." Id. (quoting Williams, 529 U.S. at 413). As for what constitutes an "unreasonable application" of settled law, "a federal court may not grant habeas simply because, in its independent judgment, the 'relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Howard, 406 F.3d at 122 (quoting Fuller v. Gorczyk, 273 F.3d 212, 219 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411)). The Supreme Court observed in Williams that "unreasonable" did not mean "incorrect" or "erroneous," id. at 410-11, noting that a writ could issue under the "unreasonable application" provision only "if the state court identifies the correct governing legal principle from this Court's decision [and] unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. As implied by this language, "Some increment of incorrectness beyond

15

error is required . . . [H]owever, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Monroe v. Kuhlman, 433 F.3d 236, 246 (2d Cir. 2006)(quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).

As for the state courts' factual findings, under the habeas statute "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003). See generally Rice v. Collins, 126 S.Ct. 969, 974 (2006).

II. The Ineffective-Assistance Claim

To demonstrate a violation of his constitutional right to the effective assistance of counsel, a petitioner must show that his lawyer's performance was "so defective that 'counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment' . . . and that counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Brown v. Artuz, 124 F.3d 73, 79 (2d Cir. 1997) (quoting

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)). As summarized

in <u>Brown</u>:

> To satisfy the first, or "performance," prong, the
> defendant must show that counsel's performance was
> "outside the wide range of professionally competent
> assistance," . . . and to satisfy the second, or
> "prejudice," prong, the defendant must show that "there
> is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would
> have been different."

<u>Id.</u> at 79-80 (quoting <u>Strickland</u>, 466 U.S. at 690, 694). <u>Accord</u>,

<u>e.g.</u>, <u>Henry</u>, 409 F.3d at 62-64; <u>Cox v. Donnelly</u>, 387 F.3d 193, 197

(2d Cir. 2004).


It bears emphasis that the <u>Strickland</u> standard is quite

deferential, and that a claim of constitutional dimension does not

arise unless a lawyer's error is so egregious as to amount to a

failure to provide minimal professional representation. Thus, a

habeas court weighing an ineffective-assistance claim "must judge

the reasonableness of counsel's challenged conduct on the facts of

the particular case, viewed as of the time of counsel's conduct[,]"

and must "determine whether, in light of all the circumstances, .

. . counsel's acts or omissions were outside the wide range of

professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690.

<u>Accord</u>, <u>e.g.</u>, <u>Loliscio v. Goord</u>, 263 F.3d 178, 192 (2d Cir. 2001).

In making this determination, "the court should recognize that

counsel is strongly presumed to have rendered adequate assistance

17

and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

The burden of proving prejudice is equally onerous. As noted, the petitioner must demonstrate "a reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (citing Strickland, 466 U.S. at 694).

Delgado contends that his attorney failed to provide constitutionally adequate assistance. This assertion is patently baseless.

Petitioner argues that his attorney erred in conceding that Abel was "unavailable" for purposes of assessing whether his statement to the police was admissible under both the hearsay rule and the Confrontation Clause. The basis for the attorney's concession was the fact that Abel was prepared to invoke his Fifth Amendment privilege if called to testify. (Tr. 15, 793-94). Petitioner asserts that the Fifth Amendment basis for finding unavailability was illusory since a defendant who has been convicted of a crime and sentenced for it has no further ground on

which to invoke his Fifth Amendment privilege with respect to that crime. (Pet's Memo at 10-11 (citing inter alia United States v. Romero, 249 F.2d 371, 375 (2d Cir. 1957)).

The problem with Delgado's argument is that the record reflects that Abel had not yet been sentenced when the State offered his statement at Delgado's trial. Indeed, the Appellate Division specifically so found in affirming Delgado's conviction, see Delgado, 287 A.D. at 328, 731 N.Y.S.2d at 32, and its finding is binding on us absent clear and convincing evidence to the contrary, 28 U.S.C. § 2254(e)(1). Since petitioner does not even attempt to supply such evidence, we must conclude that Abel had not yet been sentenced. He therefore had a legitimate basis for invoking his Fifth Amendment privilege, see, e.g., Mitchell v. United States, 526 U.S. 314, 326 (1999); People v. Sobotker, 61 N.Y.2d 44, 48, 471 N.Y.S.2d 78, 80 (1984), and was therefore unavailable. See, e.g., Latine v. Mann, 25 F.3e 1162, 1166 (2d Cir. 1994). Thus counsel's concession of unavailability was entirely proper, and it follows that Delgado can satisfy neither prong of his ineffective-assistance claim.

III. <u>The Confrontation-Clause Claim</u>

Delgado's principal claim targets the ruling of the trial court, affirmed on appeal, that Abel's statement was admissible in redacted form. In challenging that ruling, petitioner argues that Abel was not unavailable and that the statement did not bear sufficient indicia of reliability to justify its admission under the Confrontation Clause.

A. <u>The Pertinent Events</u>

The trial court's decision to admit the statement in redacted form followed an evidentiary hearing during the course of the trial. At the hearing Det. Robert Noyer, who had taken the statement, testified to his discussions with Abel after that defendant's arrest. He reported that Abel had agreed to give a statement after receiving his <u>Miranda</u> warnings, and that he then admitted that he had participated with Delgado in the robbery of the two victims. (Tr. 1663-64, 1667, 1672-76, 1678-83, 1695-96).

In Abel's statement -- both in oral form and as written -- he recounted being led to the apartment by a *santero* (that is, a tipster) in the belief that he would find drugs and money. He confirmed that he and Delgado had seized the man and woman and

forced them into the apartment, where they tied them up and searched for valuables. He also admitted taking between two and three thousand dollars, which the police had recovered from his pocket, although he denied taking jewelry. He also denied threatening the victims with death or hitting Mata (as Mata and Tedjeda later testified), and he reported that it was Delgado who held a firearm. He further confirmed that he and Delgado had fled when someone knocked at the door. (Tr. 1680-83).

At the conclusion of the hearing, the prosecutor urged admission of the statement based on his contentions that Abel had waived his <u>Miranda</u> rights, and that his admissions constituted a statement against penal interest and were demonstrably reliable since he not only admitted the essential elements of the crime but also confessed to details that were fully corroborated by the victims. The prosecutor also argued that the statement was relevant to establish that -- as the victims had testified -- the robbery had involved two men who had acted with the requisite intent. (Tr. 1697-1700, 1706-07).

Counsel for Delgado, while conceding Abel's unavailability (Tr. 795), argued against admission of the entire statement as insufficiently reliable because Abel was attempting to minimize his role in the robbery and shift responsibility to Delgado. (Tr. 1701-

02). Counsel nonetheless conceded that the portion of the statement recounting the robbery and the participation of two men was "probably" admissible (Tr. 1702-03, 1705), but he contended that Abel's account of the tipster leading the men to the site of the robbery and his description of the events after the robbery were inadmissible because they were unreliable. (Tr. 1704, 1708).

The court ruled that the statement was sufficiently reliable to constitute an admissible statement against penal interest. In so holding, Justice Rettinger observed that although Abel had disavowed certain aspects of the victims' account, he had fully admitted his direct participation in the crime. The judge also found that Abel's description of the role of the tipster was an essential part of the statement and served to provide context and to explain the robbers' intent. (Tr. 1712-17).

Based on this ruling, counsel then agreed with each other concerning the appropriate redactions from the statement to delete any specific reference to Delgado. (Tr. 1775-84). The prosecutor had Det. Noyer read the redacted version of the statement to the jury (Tr. 1799-1801), and the court instructed the jurors at that time to give the statement such credence as they deemed appropriate, taking into account their judgment as to the credibility of Det. Noyer and the fact that Abel had not testified

at trial and thus had not been subjected to cross-examination. (Tr. 1813-14).  At the conclusion of the trial, as part of the judge's final charge, he reiterated these observations and also instructed the jury that Abel's statement was to be considered "solely with respect to the issue of whether  more than one person participated in the crime and not as evidence of the [petitioner's] identification." (Tr. 2234-35).

### B. Procedural Bar

One aspect of Delgado's current challenge to the admission of Abel's statement concerns whether Abel was unavailable, that is, whether he could permissibly invoke his Fifth Amendment immunity at trial. That claim is procedurally barred from consideration in this proceeding.

As noted, during the colloquy about the admission of the statement, petitioner's attorney conceded that Abel was unavailable. When petitioner argued on appeal that the trial court had erred in finding Abel to be unavailable (Thomas Decl., Ex. A at 51-53), the State responded by noting his trial attorney's concession of the point, and it asserted that Delgado had thereby waived the issue by virtue of his non-compliance with the New York statutory rule requiring contemporaneous objections. (Id., Ex. B at

41, 48). The Appellate Division then proceeded to confirm that the argument had been waived and stated that it would not consider the issue in the interest of justice, <u>Delgado</u>, 287 A.D.2d at 328, 371 N.Y.S.2d at 32, although it also went on to observe that if it did address the argument, it would reject it since Abel had not been sentenced as of the time that the statement was introduced. <u>Id.</u> at 328, 371 N.Y.S.2d. at 32.

Under these circumstances, this aspect of petitioner's Confrontation Clause claim is barred from review. The highest state court to pass on the "unavailability" argument concluded that it should be rejected on an independent state-law ground. Moreover, that ground -- noncompliance with the State's contemporaneous-objection rule, Crim. Proc. L. § 470.05 -- is applied with great consistency by the state courts, <u>see</u>, <u>e.g.</u>, <u>People v. Yong</u>, 92 N.Y.2d 987, 988, 684 N.Y.S.2d 161, 162 (1998); <u>People v. Albert</u>, 85 N.Y.2d 851, 852-53, 623 N.Y.S.2d 848, 849 (1995); <u>People v. Rivera</u>, 233 A.D.2d 344, 344, 649 N.Y.S.2d 477, 478 (2d Dep't 1996), <u>app. denied</u>, 89 N.Y.2d 946, 655 N.Y.S.2d 897 (1997), and hence it constitutes an adequate as well as independent state-law ground. <u>See</u>, <u>e.g.</u>, <u>Cotto v. Herbert</u>, 331 F.3d 217, 239-41 (2d Cir. 2003). Furthermore, the fact that the appellate court also observed in the alternative that petitioner's argument was meritless does not undercut the independent nature of the court's state-law holding.

See, e.g., Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999).

When faced with such a holding by the state courts, a petitioner may obtain merits review by the habeas court only if he demonstrates both cause for his failure to comply with the state's procedural rules and actual prejudice from the asserted constitutional error, or else establishes that a failure to address the merits of his claim would constitute a fundamental miscarriage of justice. See, e.g., Lambrix v. Singletary, 520 U.S. 518, 522-23 (1997); Aparicio, 269 F.3d at 90 (citing Coleman v. Thompson, 501 U.S. 722, 748-50 (1991)). Petitioner can satisfy none of these criteria.

"Cause may be demonstrated with a showing "that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by state officials' made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel." Murray v. Carrier, 477 U.S. 478, 488 (1986); see, e.g., Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999); Bossett v. Walker, 44 F.3d 825, 829 (2d Cir. 1994). To demonstrate prejudice, a habeas petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional

dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)(emphasis in original). A fundamental miscarriage of justice occurs where an innocent person has been convicted. It has been construed to mean that, in an extraordinary case, "a constitutional violation has probably resulted in the conviction of one who is actually innocent," allowing a federal habeas court to grant the writ even in the absence of "a showing of cause for the procedural default." <u>Murray</u>, 477 U.S. at 492. <u>See</u>, <u>e.g.</u>, <u>Sawyer v. Whitley</u>, 505 U.S. 333, 339 n.6 (1992).

Delgado cannot demonstrate cause for his failure to preserve the argument about Abel's availability. Nothing prevented his attorney from challenging the notion that Abel was unavailable at trial. Moreover, although petitioner could be heard to argue that the failure to make that challenge reflected attorney incompetence, and while the denial of effective assistance of counsel, if it led to the default, is recognized as "cause" for purposes of the procedural-bar analysis, <u>see</u> <u>Coleman</u>, 501 U.S at 753-54, such an argument would fail here because, as already noted, his attorney's concession with regard to unavailability was plainly justified.[5]

---

[5] It bears mention that, as a procedural matter, a petitioner cannot invoke a Sixth Amendment claim as the basis for cause unless he has asserted that Sixth Amendment argument as an independent claim in state court and exhausted his state-court remedies as to that claim. <u>See</u>, <u>e.g.</u>, <u>Edwards v. Carpenter</u>, 529 U.S. 446, 453 (2000). Respondent concedes that petitioner did so in this case. (<u>See</u> Resp. Memo at 16).

It equally follows that petitioner cannot demonstrate prejudice from an asserted constitutional violation. As noted, the trial court's finding that Abel was unavailable did not violate his rights, and in any event the introduction of a redacted version of the Abel statement, combined with a clear limiting instruction, plainly did not affect the outcome of the trial. The verdict rested instead on the overwhelming evidence of petitioner's role in the crime, including the testimony of the victims and the police officers' account of discovering Delgado and Abel fleeing together from the site of the robbery while in possession of a firearm, a knife and some of the property and cash that the victims had reported being stolen from them.

Finally, petitioner obviously cannot demonstrate that a refusal by the habeas court to consider his "unavailability" claim would amount to a fundamental miscarriage of justice. He makes no real effort to demonstrate innocence, and, as noted, the evidence of his guilt was overwhelming. See Schlup v. Delo, 513 U.S. 298, 321-22 (1995) ("the fundamental miscarriage of justice exception is 'extremely rare' and should be applied only in 'the extraordinary cases.'"); Bousley v. United States, 523 U.S. 614, 623 (1998) ("To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" (citing Schlup, 513

U.S. at 327-28). As the Supreme Court observed in <u>Schlup</u>, "to be credible such a claim [of innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." 513 U.S. at 324. Petitioner offers none.

In sum, Delgado's challenge to the trial court's finding of unavailability is procedurally barred and may not be reviewed in a federal habeas proceeding.

C. <u>Other Grounds to Challenge the Admission of Abel's Statement</u>

The balance of Delgado's argument concerning the admission of Abel's statement focuses on what he claims is its failure to satisfy the requirement of reliability. He asserts therefore that its admission violated his right to confront Abel. This claim is meritless.

The traditional rule governing assessment of claims under the Confrontation Clause derives from <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980), in which the Supreme Court held that an out-of-court declaration by an unavailable witness inculpating the defendant may be received for the truth of the statement only if it is found to be reliable. Under <u>Roberts</u>, reliability could be established either

through "a showing of particularized guarantees of trustworthiness" or from the fact that the evidence fell "within a firmly rooted hearsay exception." Id. at 66.[6]

In a subsequent decision, the Supreme Court specifically addressed the status of a defendant's statement that inculpates a co-defendant. See Lilly v. Virginia, 527 U.S. 116 (1999). Applying Roberts, the plurality opinion in Lilly concluded that a confession that implicates a co-defendant is not a firmly rooted hearsay exception, and it further concluded that the particular circumstances and nature of the statement at issue in that case did not exhibit sufficient indicia of reliability to justify its admission.[7] The Second Circuit has since held that Lilly does not

---

[6] The Supreme Court recently overruled Roberts, and held that out-of-court statements by a non-testifying declarant that are of a "testimonial" nature -- a category that includes unsworn declarations made to police officers -- "may not be received against the accused to establish the truth of what was stated unless (i) the declarant is unavailable to testify at the trial, and (ii) the accused was afforded a prior opportunity to cross-examine the declarant on the statement." Mungo v. Duncan, 393 F.3d 327, 332 (2d Cir. 2004) (citing Crawford v. Washington, 541 U.S. 36, 53-54 (2004)). Crawford, however, is not retroactively applied on collateral review, see Mungo, 393 F.3d at 335, and since Delgado's conviction became final long before Crawford was decided, Crawford is irrelevant here. We accordingly take the contours of his Sixth Amendment rights as of the date when his conviction became final.

[7] In a concurring opinion Justice Scalia indicted that, in his view, any such statement, being of a "testimonial" nature, could not be admitted against a defendant. See Lilly, 527 U.S. at

necessarily preclude admission of a defendant's confession against a co-defendant, noting that the basis for rejecting admission of the statement in <u>Lilly</u> was that the confession in that case was in fact "largely non-self inculpatory". <u>United States v. Dolah</u>, 245 F.3d 98, 104-05 (2d Cir. 2001).

The pertinent question, then, for Confrontation Clause analysis is whether the redacted version of Abel's statement bore "particularized guarantees of reliability." That question requires consideration of "the totality of the circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." <u>Idaho v. Wright</u>, 497 U.S. 805, 821 (1990).

The most obvious circumstance suggesting the reliability of Abel's confession is that Abel was admitting the commission of an armed robbery and thereby exposing himself to criminal conviction and a substantial prison term. <u>See</u>, <u>e.g.</u>, <u>United States v. Moskowitz</u>, 215 F.3d 265, 269 (2d Cir. 2000). Moreover, in contrast to the declarant in <u>Lilly</u>, Abel was not making an effort to shift

---

143. This analysis prefigured the Court's later decision in <u>Crawford</u>. In separate concurrences, Justice Thomas and Chief Justice Rehnquist stated that confessions of this sort, even if inculpatory of a co-defendant, could be admissible if shown to be reliable, and they argued that a remand for such a reliability analysis was in order. <u>Lilly</u>, 527 U.S. 143-44 Thomas, J., concurring); <u>id.</u> at 144-49 (Rehnquist, C.J.).

the blame to his co-defendant, as he freely admitted participation

in the robbery, his intention to steal drugs and cash, and his

seizure of a substantial amount of cash from the victims. Moreover,

although he denied some of the conduct that the victims cited --

notably striking Mr. Mata and taking jewelry -- his statement fully

admitted his direct and pre-planned role in the armed robbery.[8]

In addition, Abel made the statement in the form of a

narrative and not in response to questioning by the police. (Tr.

1795-98). This too distinguishes his statement from that under

consideration in Lilly. See Lilly, 527 U.S. at 120-21, 137, 139.

Finally, the statement as read to the jury in its redacted form

implicated only Abel, and the jurors were instructed that the only

role of the statement at trial was to establish that Abel had acted

with another individual. The reliability of such a limited

statement is obviously enhanced by its narrowness, see, e.g.,

United States v. Petrillo, 237 F.3d 119, 122 (2d Cir. 2000)(noting

that the statement in Lilly specifically named co-defendant), and

the limiting instruction given to the jury offers further assurance

that the verdict would not be based on any utterance by Abel that

could be meaningfully called into question. See, e.g., United

---

[8] Indeed, his reference to the *sentero* underscores the
premeditated nature of his actions and his specific intention to
steal not only money, but also cocaine, even though he and
petitioner never found any.

States v. Gallego, 191 F.3d 156, 167 (2d Cir. 1999). In sum, it was entirely reasonable for the state courts to deem Abel's statement to be reliable.[9]

Wholly apart from these indicia of reliability, we note that the statement by Abel hewed closely to the details provided by the victims, who described the behavior of the two men who assaulted and robbed them, and by the police witnesses, who identified the two men and observed their flight from the building. That consistency and the overwhelming evidence of guilt provided by the testimony of both civilian and police eyewitnesses amply demonstrates in any event that the admission of the redacted statement could not possibly have had a "substantial and injurious effect" on the verdict against Delgado, Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), and hence, even if erroneous, was harmless. See, e.g., Glenn v. Bartlett, 98 F.3d 721, 729 (2d Cir.

_____

[9] We note that the state courts were assessing reliability as required for admission of a statement against penal interest under the New York rules on hearsay. (See, e.g., Thomas Decl., Ex. A at 50-55 (arguing state-law admissibility standard; Delgado, 287 A.D.2d at 328, 371 N.Y.S.2d at 31-32. Although the reliability test for that body of law differs from the reliability analysis mandated by the Confrontation Clause -- specifically, the state courts look to whether other trial evidence corroborates the statement, compare Lilly, 527 U.S. at 136-38 (citing inter alia Wright, 497 U.S. at 822)(corroboration is irrelevant to Confrontation Clause reliability analysis) with Delgado, 287 A.D.2d at 328, 371 N.Y.S.2d at 28; see also People v. Settle, 46 N.Y.2d 154, 167-69, 412 N.Y.S.2d 874, 882-83 (1978) -- petitioner does not suggest any basis for concluding that the statement would not meet the Sixth Amendment standard.

1996)(looking to strength of State's case in conducting harmless-error analysis on Confrontation Clause claim).[10]

Finally, we note that even if the state courts erred in their assessment of reliability, it cannot be said that their decisions in this regard were either contrary to, or an unreasonable application, of settled Supreme Court precedent. The closest analogous Supreme Court analysis, in <u>Lilly</u>, involved a confession that was made under strikingly different circumstances -- it reflected an evident effort by the declarant to shift the blame for the crime from himself to his co-defendant. Also, as noted, the confession in <u>Lilly</u> was not redacted and hence the reliability of the identification of the defendant was particularly in issue there, unlike in this case. Under these circumstances, we cannot say that the determination of the state courts here that Abel's redacted statement was reliable reflects an unreasonable application of <u>Lilly</u>. Accordingly, habeas relief would be unavailable even if we were to question the reliability determination of the Appellate Division. <u>See</u> 28 U.S.C. § 2254(d)(1).

_____

[10] We recognize that the consistency of a declarant's confession with other evidence in the case is irrelevant to the reliability analysis, <u>Lilly</u>, 527 U.S. at 137-38 (citing <u>Wright</u>, 497 U.S. at 822, and we do not rely on that consistency in concluding that the state courts' decision with respect to reliability is entirely defensible.

## CONCLUSION

For the reasons noted, we recommend that the writ be denied and the petition dismissed with prejudice. We also see no basis for the issuance of a certificate of appeal and therefore recommend that it be denied.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Kimba M. Wood, Room 1610, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: **New York, New York**
**August 2, 2006**

**RESPECTFULLY SUBMITTED,**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation have been mailed
this date to:

Mr. Victor Delgado
# 99-A-2096
Mt. McGregor Correctional Facility
1000 Mt. McGregor Road
P.O. Box 2071
Wilton, NY 12831

Beth J. Thomas, Esq.
Assistant Attorney General
   for the State of New York
120 Broadway
New York, New York 10271

35